tract, was completed by the cash payment and the delivery of the notes, cannot be sustained.

The default in payment and demand for possession are alleged by plaintiff, are not denied, and must be taken as admitted facts. Title was not to pass "until the same is paid for in full," and a careful reading of the contract leads to but one conclusion,—that the words "the same" refer to and mean the cash register.

Plaintiff's right to maintain this action does not, I think, depend upon a return or a tender of the unpaid notes at the time of the demand. The right of action, under the contract, accrued immediately upon the default in payment, whereupon plaintiff had the right to repossess itself of the property in controversy. But, if there be any doubt as to the last proposition,—which I do not here concede,—it was removed by the offer by plaintiff at the trial to surrender the unpaid notes, all of which were then past due. The contract was not with the corporation George D. Ferguson & Co., but was with a co-partnership trading under the firm name of George D. Ferguson & Co., and of which firm defendant is the surviving partner. Bearing in mind "that the title of said cash register shall not pass until the same is paid for in full," and that such payment has not been made, the attempted sale by the vendee to the corporation gave it no title whatsoever, and it does not appear that plaintiff in any wise assented thereto.

Defendant's contention that the bringing of suit, prior to the commencement of this action, by plaintiff against the corporation, to recover the balance of the contract price of said cash register, was an election, inconsistent with the theory upon which plaintiff must prevail, if at all, in this action, cannot be upheld. From a reading of the two complaints, it is most apparent that there was a want of knowledge of all the facts on plaintiff's part, since in the one against the corporation it is sought to charge it as the vendee named in the conditional sales contract. This, clearly, was a mistake, due, possibly, to the similarity of names of the vendee firm and the corporation. There is no evidence to justify the conclusion that plaintiff has waived the forfeiture provisions of said contract or its right to maintain this action.

Plaintiff's motion to direct a verdict in its favor should be granted, and defendant's motion denied, with an exception to defendant. Judgment is therefore directed for plaintiff, with costs.

Judgment for plaintiff, with costs.

---

(34 App. Div. 602.)

### SEIBERT et al. v. MILLER et al.

(Supreme Court, Appellate Division, First Department. November 25, 1898.)

1. WILLS—CONSTRUCTION—CONTINGENCIES.

A bequest provided that, if the legatee was under-age when the legacy became payable, he should receive $1,000 a year until his majority, and, if he died without issue before majority, the legacy should be paid to another. *Held*, in an action by the legatee, while an infant, for construction of the will, that the question as to the distribution of the income of the bequest in excess of $1,000, in case he died without issue, was not be-

fore the court, in the absence of proof that there would be any excess, and in view of the fact that it could not be assumed that the legatee would die without issue before reaching his majority.

2. SAME—RESIDUARY CLAUSE—INCOME.

A will directed the payment of an annuity to the widow for life, from the income of the estate, in lieu of dower; and "all the rest, residue, and remainder of the proceeds of [the] residuary estate and property, including all lapsed legacies and property not herein effectually devised," were bequeathed to a certain legatee. *Held*, that the legatee was entitled to the income that accumulated during the widow's life in excess of the annuity.

Appeal from special term, New York county.

Action by Ottilie Seibert, an infant, by George H. Finck, guardian ad litem, and another, against Jacob H. Miller and others, as executors and trustees of the estate of John W. Miller, deceased, and others, to construe the will. Judgment for defendants, and plaintiffs appeal. Affirmed.

The will provided as follows:

"Third. I give, devise, and bequeath all the rest, residue and remainder of my estate, real and personal, wheresoever and whatsoever the same may be, to my executors, the survivors and survivor of them, in trust, nevertheless, to retain my estate as invested at the time of my death so long as they may deem proper, or from time to time, as they deem prudent, to convert the same into money, and invest and reinvest the same, either upon bond and mortgage on improved real estate in the city of New York, or in improved real estate in said city, and to collect and receive the rents, interest, and income thereof, and to collect and receive the rents, interest, and income from my estate, and after paying any and all expenses, repairs, charges, taxes, and insurance, to pay over out of the net income thereof to my beloved wife, Sophia E. Miller, for and during the term of her natural life, the sum of five thousand dollars per year. I also give, devise, and bequeath to my wife the use, during the term of her natural life, of my dwelling house in New York City, together with all of the furniture and other personal property in or about my said house, and also the use of my farm in Erie county, New York, including furniture, and all personal property, of every name, nature, and description, on said farm. The use of said dwelling house and farm is given to my wife free from any expenses for taxes, assessments, insurance, or repairs, which are to be paid by my executors. The foregoing provisions for her are in lieu and bar of her dower in my estate. My said farm and property thereon shall not be sold by my executors during her life, except upon her written request.

"Fourth. Upon the death of my wife, or upon my death in case my wife shall not survive me, I direct that my said estate be converted into money, and that my executors sell my real and personal property at such time or times as they deem wise; and I give and bequeath the proceeds of my said estate as follows: (1) I give and bequeath to my beloved grandchild Ottilie Seibert the sum of fifty-five thousand dollars, and I give and bequeath to my beloved grandchild Elsie Seibert the sum of fifty-five thousand dollars. In case either my said grandchild Ottilie Seibert or my said grandchild Elsie Seibert shall be under-age at the time the legacy given to her becomes payable, I direct my executors to hold the same in trust during her minority, and to apply to the use of the grandchild for whom the said sum of fifty-five thousand dollars is intended the sum of one thousand dollars per annum until such grandchild shall attain the age of twenty-one years, or sooner die, and accumulate for her the remainder of the income, and, upon such grandchild attaining the age of twenty-one years, to pay over the said sum of fifty-five thousand dollars, and any accumulation of income thereon, to such grandchild; and, in case of her death before attaining the age of twenty-one years, to pay the same to her child or children her surviving; and in case my grandchild Ottilie Seibert shall die before attaining the age of twenty-one years, leaving no child or children her surviving, then to pay, assign, transfer, and set over the said sum of fifty-five thousand dollars, one-half to the Ger-

man Evangelical Aid Society, which now has its office in Fairfax street, in the city of Brooklyn, and the remaining one-half thereof to the German Evangelical Synod of North America, located at St. Louis, Missouri, to be used for mission purposes in the East Indies; and in case my said grandchild Elsie Seibert shall die without issue, and before attaining the age of twenty-one years. to pay the said sum of fifty-five thousand dollars intended for her benefit to the Ottilie Orphan Asylum, now located at Forest avenue and Butler street, East Williamsburg, town of Newton, Queens county, New York. (2) I also give and bequeath out of the proceeds of my residuary estate upon the death of my wife, or upon my death in case she shall die before me, to my brother, Martin Miller, of Jersey City, New Jersey, fifteen thousand dollars; to Mrs. Carrie Westrup, of New York City, one thousand dollars; to my sister, Catherine Beyer, five thousand dollars; to Kate Herman, of Warsaw, county of Wyoming, N. Y., five thousand dollars. (3) I also give and bequeath out of the proceeds of my said residuary estate upon the death of my wife, or upon my death in case my wife shall not survive me, the sum of sixty thousand dollars to the said Ottilie Orphan Asylum, now located at Forest avenue and Butler street, East Williamsburg, Newton, Queens county, New York, for the erection of a building or buildings for said orphan asylum, and to the Evangelical Reform Church of the Dutch Reform Denomination, corner of Avenue B and Fifth street, in the city of New York, under whatever name it may be incorporated, the sum of twenty-five thousand dollars. It is my wish that the said sum of twenty-five thousand dollars be invested, and kept invested, upon bond and mortgage upon improved real estate in the city of New York, by said church, and the income collected, and applied towards the payment of the salary of the present and any future minister of said church, so long as the said church shall remain in its present religious sect or denomination. (4) After the foregoing legacies shall have been paid in full, I give and bequeath out of the proceeds of my residuary estate upon the death of my wife, or upon my death, if she shall die before me, to the Five Point House of Industry, in the city of New York, five thousand dollars: to the Wetmore Home (formerly known as the 'Home for Fallen and Friendless Girls'), of New York City, under whatever name the same may be incorporated, five thousand dollars; to the German Evangelical Synod and Missionary Society of North America, of St. Louis, Missouri, the sum of ten thousand dollars, hoping that the same will be applied for missionary purposes in the East Indies. In case the proceeds of my residuary estate shall not be sufficient to pay the three last-named legacies in full, then they shall be paid pro rata. In respect to the other or prior legacies hereinbefore mentioned, it is my desire that the same be paid in full in the order in which the same are stated in this my will, so far as the proceeds of my estate shall be sufficient for that purpose. (5) All the rest, residue, and remainder of the proceeds of my residuary estate and property, including all lapsed legacies, and property not herein effectually devised, given, or bequeathed, I give, devise, and bequeath to the said Ottilie Orphan Asylum, of East Williamsburg, New York."

The following is the opinion of LAWRENCE, J., in the court below:

"I do not regard the question as to what the disposition should be of any accumulation of the plaintiffs' shares under the will, in case either or both of the plaintiffs should die during minority, as properly before the court at this time. It cannot be assumed from the evidence before me that any surplus will exist, or that either of the plaintiffs will die without leaving lawful issue during her minority. As to the other branch of the case, it seems quite clear that the income which may arise after the expenses for the management of the estate, and the payment of the $5,000 yearly to the widow, should go to the Ottilie Orphan Asylum, as the residuary legatee. The residuary clause provides as follows: 'All the rest, residue, and remainder of the proceeds of my residuary estate and property, including all lapsed legacies, and property not herein effectually devised, given, or bequeathed, I give, devise, and bequeath to the said Ottilie Orphan Asylum, of East Williamsburg, New York.' There is no qualification of the terms of the residuary clause, and the well-settled rule is that, unless a residuary bequest is circumscribed by words of

unmistakable import, it will, to prevent intestacy, be construed so as to perform the office intended; i. e. to dispose of all the residuary estate. In re Miner's Will, 146 N. Y. 121, 40 N. E. 788; Floyd v. Carow, 88 N. Y. 560; Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602; In re Allen, 151 N. Y. 243, 45 N. E. 554. There is no disposition of the surplus of income which may accrue during the widow's lifetime, and it cannot be assumed that the testator intended such accumulation should be for her benefit. The provisions of the will in favor of the widow are made in lieu of dower, and are so specific that it cannot be successfully contended that she should take any further benefit thereunder; nor can it be held that the plaintiffs are entitled to such surplus. Under the fourth clause of the will, the bequest in favor of each of the plaintiffs is limited to the specific sum of $55,000, which sum, with the accumulation thereon, is to be paid to them upon the attainment of their majority. The will is silent as to the disposition of any surplus other than that which may accrue upon the sum of $55,000. I am therefore of the opinion that, if any surplus accrues during the widow's lifetime upon the other portions of the estate, the disposition thereof will fall under the residuary clause of the will. The question of costs will be reserved until the settlement of the judgment. Draw judgment and decision accordingly, and settle on three days' notice."

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

G. H. Finck, for appellants.

R. A. Stackpoole and John R. Abney, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of LAWRENCE, J., in the court below.

---

### VORCE v. OPPENHEIM.

(Supreme Court, Appellate Division, Third Department. January 17, 1899.)

1. MALICIOUS PROSECUTION—TERMINATION—HABEAS CORPUS.
　　When a prisoner is in the legal custody of a constable, his discharge by a county judge on a writ of habeas corpus directed to the justice of the peace who issued the warrant does not terminate the criminal proceeding before the justice, as by such writ the county judge acquired no jurisdiction.

2. SAME—MALICE—INSTRUCTIONS.
　　A charge in an action for malicious prosecution must state that both malice and want of probable cause must be established by plaintiff.

3. SAME—PROBABLE CAUSE—EVIDENCE—FRAUD.
　　When he instituted criminal proceedings against plaintiff for obtaining goods on credit with intent to defraud, defendant had reason to believe that plaintiff knew when he ordered the goods that his property would soon be in the sheriff's hands for the benefit of favored creditors, since his entire stock was levied on only two days after the goods were delivered, and· nearly all of the goods were disposed of before the levy. Plaintiff failed to make any satisfactory explanation, when asked to do so. *Held*, in an action for malicious prosecution, that the facts did not show want of probable cause.

4. APPEAL—REVIEW—INSTRUCTIONS—EXCEPTIONS.
　　Where a case is presented to the jury on an erroneous theory, the question may be reviewed on appeal, though no exception was taken.

Appeal from trial term, Washington county.

Action by Burton D. Vorce against William L. Oppenheim. From a judgment in favor of plaintiff, defendant appeals. Reversed.